UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MONTAMER CORPORATION,                            :

        Plaintiff,                                :        Case No. 07 Civ 6531 (SCR) (LMS)

     -against-                                   :        ECF

HARTFORD INSURANCE COMPANY OF          :
THE MIDWEST,
                                                            :

        Defendant.
------------------------------------------------------------- x

# EXHIBIT A
# PART 3 OF 3

c. **Business Income and Extra Expense**

If Business Income and/or Extra Expense are provided under this policy, the most we will pay in any one occurrence in subparagraph **(3)** is increased to $500,000 in any one occurrence at each premises.

2. **Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay is increased to $25,000, but not more than $1,000 for any one tree, shrub or plant.

C. The following changes apply only if Business Income and Extra Expenses are covered under this policy. These changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

1. **Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover loss of Business Income and Extra Expense caused by or resulting from the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Business Income Extension For Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form. Business Income Extension for Off-Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension for Off-Premises Utility Services coverage is indicated in the Declarations.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SUPER STRETCH

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A.** The following changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

1. **Blanket Coverage Limit of Insurance**

   The following Additional Coverage is added:

   We will pay up to $150,000 in any one occurrence as a Blanket Coverage Limit of Insurance to apply at each "scheduled premises" to apply to sum of all covered loss under the coverages described in this section **A.1.a.** through **A.1.f.** arising out of a single Covered Cause of Loss occurrence.  You may apportion this Limit among these coverages as you choose.

   This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for these coverages.

   a. **Accounts Receivable**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or physical damage to your records of accounts receivable receivable on or away from your "scheduled premises", including while in transit.

      This Additional Coverage is subject to the provisions of Accounts Receivable, Form SS 04 39, with the exception of the Limit of Insurance provision contained in that form. Accounts Receivable, Form SS 04 39 is made a part of this policy whether or not Accounts Receivable coverage is indicated in the Declarations.

   b. **Computers and Media**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or physical damage to your computer systems.

      This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

   c. **Debris Removal**

      Within the Blanket Coverage Limit of Insurance, we will pay for increases under Debris Removal additional limit, **C.4.b.**

   d. **Personal Property of Others**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or physical damage to personal property of others that is in your care, custody or control.

      This Additional Coverage is subject to the provisions of Personal Property of Others, Form SS 04 45, with the exception of the statement concerning Limit of Insurance applicable to Personal Property of Others shown in the Declarations, contained in that form.  Personal Property of Others, Form SS 04 45 is made a part of this policy whether or not Personal Property of Others coverage is indicated in the Declarations.

   e. **Temperature Change**

      Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or physical damage to perishable stock caused by or resulting from a change of temperature or contamination by a refrigerant.

© 2005, The Hartford

This additional coverage is subject to the provisions of the Temperature Change, Form SS 04 46, with the exception of the Limit of Insurance provision contained in that form. Temperature Change, Form SS 04 46 is made a part of this policy whether or not Temperature Change coverage is indicated in the Declarations.

**f. Valuable Papers and Records**

Within the Blanket Coverage Limit of Insurance, we will pay for direct physical loss of or physical damage to your valuable papers and records on or away from your "scheduled premises", including while in transit.

This Additional Coverage is subject to the provisions of the Valuable Papers and Records Coverage in form SS 04 47, with the exception of the Limit of Insurance provision contained in that form. Valuable Papers and Records Coverage, Form SS 04 47 is made a part of this policy whether or not Valuable Papers and Records coverage is indicated in the Declarations.

**2. Back Up of Sewer or Drain Water Damage**

The following Additional Coverage is added:

We will pay for direct physical loss or physical damage to Covered Property solely caused by water that backs up from a sewer or drain.

This coverage is included within the Covered Property Limits of Insurance.

**THIS IS NOT FLOOD INSURANCE**

We will not pay for water or other materials that back up from any sewer or drain when it is caused by any flood. This applies regardless of the proximity of the flood to Covered Property. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not.

**3. Brands and Labels**

The following Additional Coverage is added:

In the event of covered physical loss or physical damage to merchandise that is branded or labeled, we will take all or part of the physically damaged property at an agreed or appraised value and we will pay for:

**a.** Expenses you incur to:

  **(1)** Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise and its containers to comply with the law.

**b.** Any reduction in the salvage value of the physically damaged merchandise as the result of the removal of the brand or label.

This Additional Coverage is included within the Business Personal Property Limit of Insurance.

**4. Claim Expenses**

The following Additional Coverage is added:

In the event of covered loss or physical damage we will pay up to $10,000 as an additional Limit of Insurance to cover reasonable expenses incurred by you at our specific request to assist us in:

**a.** The investigation of a claim or suit; or

**b.** The determination of the amount of loss, such as taking inventory, or auditing business records.

**5. Computer Fraud**

The following Additional Coverage is added:

We will pay up to $5,000 in any one occurrence for physical loss of or physical damage to "money", "securities", and other property having intrinsic value resulting directly from computer fraud. Computer fraud means any act of stealing property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside your premises or from a banking institution or similar safe depository, to a person (other than a "messenger") outside those premises or to a place outside those premises.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**5. Employee Dishonesty (including ERISA)**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover loss from employee dishonesty. This includes ERISA coverage. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Employee Dishonesty Coverage, Form SS 04 42, with the exception of the Limit of Insurance provision contained in that form. Employee Dishonesty Coverage, Form SS 04 42 is made a part of this policy whether or not Employee Dishonesty Coverage is indicated in the Declarations.

**6. Fine Arts**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as an additional Limit of Insurance at each "scheduled premises" to extend the insurance that applies to Business Personal Property to apply to Fine Arts that are:

**a.** Your property; or

**b.** The property of others that is in your care, custody or control.

As used in this Additional Coverage, **Fine Arts** means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property, of rarity, historical value or artistic merit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

The value of Fine Arts will be the market value at the time of direct physical loss or physical damage.

**7. Forgery**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover loss from forgery of covered instruments, money orders, credit cards, and counterfeit money. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Forgery Coverage, Form SS 04 86, with the exception of the Limit of Insurance provision contained in that form. Forgery Coverage, Form SS 04 86 is made a part of this policy, whether or not Forgery Coverage is indicated in the Declarations.

**8. Laptop Computers - Worldwide Coverage**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply to laptop, palmtop, personal digital assistants (PDAs), and similar portable computer equipment and accessories anywhere in the world, including while in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**Limitation:** We will not pay for direct physical loss or physical damage caused by, resulting from, arising out of the theft of this property which in transit as checked baggage.

This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

**9. Off-Premises Utility Services - Direct Damage**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to Covered Property caused by or resulting from the interruption of utility services.

This additional coverage is subject to the provisions of Off-Premises Utility Services - Direct Damage, Form SS 40 18, with the exception of the Utility Services Limit of Insurance contained in that form. Off-Premises Utility Services – Direct Damage, Form SS 40 18 is made a part of this policy, whether or not Off-Premises Utility Services – Direct Damage coverage is indicated in the Declarations.

**10. Outdoor Signs**

The following Additional Coverage is added and supercedes any other coverage for signs in this policy:

We will pay up to full value of outdoor signs at each "scheduled premises" to cover direct physical loss of or physical damage to outdoor signs.

This Additional Coverage is subject to the provisions of Outdoor Signs, Form SS 04 44, with the exception of the Limit of Insurance provision and paragraph **E.** of that form. Outdoor Signs, Form SS 04 44 is made a part of this policy whether or not Outdoor Signs coverage is indicated in the Declarations.

**11. Pairs or Sets**

The following Additional Coverage is added:

If pairs or sets of stock are damaged by a Covered Cause of Loss, we will pay any reduction in value of the undamaged parts of such damaged pairs or sets.

As used in this Additional Coverage, the term stock means merchandise held in storage or for sale, raw materials, and goods in-process or finished.

This coverage is included within the Business Personal Property Limit of Insurance.

**12. Property at Other Premises**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence to extend coverage for Business Personal Property at any premises not described in the Declarations.

This includes property that you have sold under an installation agreement and your responsibility continues until the property is accepted by the customer.

This Extension does not apply to:

**a.** Property in the care, custody or control of your salespersons;

**b.** Property at any fair or exhibition;

**c.** Property in transit; or

**d.** Property temporarily stored at any premises not described in the Declarations.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**13. Salespersons' Samples**

The following Additional Coverage is added:

We will pay up to $5,000 in any one occurrence as an additional Limit of Insurance to extend Business Personal Property to cover:

**a.** Samples of your stock in trade (including containers); and

**b.** Similar property of others;

but only while such property is in:

**a.** Your custody while acting as a sales representative; or

**b.** In the custody of your sales representatives or agents.

**14. Tenant Building Coverage - Required by Lease**

The following Additional Coverage is added:

We will pay up to $20,000 in any one occurrence as a Limit of Insurance to apply to direct physical loss of or physical damage to Building and Business Personal Property for which you have a contractual responsibility to insure. This includes building fixtures, machinery and equipment.

**15. Transit Property in the Care of Carriers for Hire**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply to direct physical loss of or physical damage to property while in transit at your risk.

This Additional Coverage is subject to the provisions of Transit Property in the Care of Carriers for Hire, Form SS 04 30, with the exception of the Limit of Insurance provision contained in that form. Transit Property in the Care of Carriers for Hire, Form SS 04 30 is made a part of this policy whether or not Transit Property in the Care of Carriers for Hire is indicated in the Declarations.

**16. Valuation Changes**

The following are added to the Loss Payment Property Loss Condition **E.6.d.:**

**a. Commodity Stock**

We will determine the value of merchandise and raw materials that are bought and sold at an established market exchange. We will determine the value at:

**(1)** The posted market price as of the time and place of loss;

**(2)** Less discounts and expenses you otherwise would have had.

**b. Manufactured Goods**

We will determine the value of goods that you have manufactured at the selling price less discounts and expenses you otherwise would have had.

**c. Mercantile Stock - Sold**

We will determine the value of goods you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**B.** The following changes apply to the Standard Property Coverage Form, Coverage Extensions, **A.5.**, or to the Special Property Coverage Form, Coverage Extensions, **A.6.:**

**1. Newly Acquired or Constructed Property**

The following changes are made to Newly Acquired or Constructed Property:

**a. Building**

The most we will pay in subparagraph **(1)** is increased to $1,000,000 in any one occurrence at each premises.

**b. Business Personal Property**

The most we will pay in subparagraph **(2)** is increased to $500,000 in any one occurrence at each premises.

**c. Business Income and Extra Expense**

If Business Income and/or Extra Expense are provided under this policy, the most we will pay in subparagraph **(3)** is increased to $500,000 in any one occurrence at each premises.

**2. Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay is increased to $25,000 in any one occurrence, but not more than $1,000 for any one tree, shrub or plant.

**3. Personal Effects**

In the Personal Effects Coverage Extension, the most we will pay is increased to $25,000 in any one occurrence at each "scheduled premises."

**4. Property Off-Premises**

The following changes are made to subparagraph **c.(2)** of Property Off-Premises:

**a.** The most we will pay in any one occurrence is increased to $25,000.

**C.** The following changes apply only if Business Income and Extra Expenses are covered under this policy. These changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

**1. Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover loss of Business Income and Extra Expense caused by or resulting from the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This additional coverage is subject to the provisions of Business Income Extension for Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form. Business Income Extension For Off-Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension For Off-Premises Utility Services coverage is indicated in the Declarations.

**2. Business Income Extension for Web Sites**

The following Additional Coverage is added:

We will pay up to $50,000 in any one occurrence as a Limit of Insurance to cover loss of Business Income you sustain due to the necessary interruption of business operations caused by or resulting from direct physical loss of or physical damage to your Web Site operation at the premises of a vendor acting as your service provider. Such interruption must be caused by or result from a Covered Cause of Loss.

**a. Coverage Time Period**

We will only pay for loss you sustain during the 7 day period immediately following the first 12 hours after the Covered Cause of Loss.

**b. Conditions**

This coverage applies only:

**(1)** If you have a back-up copy of your Web Page stored at a location other than the site of the Web Site vendor.

**(2)** To the extent that Business Income is permanently lost.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**3. Business Income From Dependent Properties**

The following Additional Coverage is added:

We will pay up to $50,000 in any one occurrence as a Limit of Insurance to apply loss of Business Income and Extra Expense due to direct physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss. This Limit of Insurance is in addition to any other Limit shown in the Declarations for specific Dependent Properties.

This additional coverage is subject to the provisions of Business Income from Dependent Properties, Form SS 04 78, with the exception of the Limit of Insurance provision contained in that form. Business Income from Dependent Properties, Form SS 04 78 is made a part of this policy whether or not Business Income from Dependent Properties coverage is indicated in the Declarations.

There is no requirement for Dependent Properties to be scheduled for the coverages provided by this Stretch endorsement to apply.

**4. Extended Business Income**

Extended Business Income Additional Coverage, paragraph **4.j.(2)(b)** of the Standard Property Coverage Form and paragraph **5.r.(2)(b)** of the Special Property Coverage Form is amended to read as follows:

**(b)** 90 consecutive days after the date determined in **(a)** above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME FROM DEPENDENT PROPERTIES

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of this policy apply to the insurance stated below

## A. Coverage

**1. Dependent Properties**

a. We will pay the actual loss of Business Income you sustain due to physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the premises of a dependent property listed or scheduled in the Declarations.

b. We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole, or in part, by using any other available:

(1) Sources of materials; or

(2) Outlet for your products.

c. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## B. Additional Conditions

The following conditions also apply:

1. Coverage provisions respecting direct physical loss or physical damage will apply separately to each Dependent Property premises.

2. This Additional Coverage will end when the Dependent Property should be rebuilt or replaced with reasonable speed and similar quality.

3. The Business Income coverage period as stated in paragraph **b.** above does not include any increased period required due to the enforcement of any ordinance or law that:

a. Regulates the construction, use or repair, or requires the tearing down of any property; or

b. Requires any insured or others to test for, monitor, clean up, remove, contain, treat,detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants or contaminants".

4. The definition of Business Income contained in paragraph **g.**, Business Income Additional Coverage, of the Standard Property Coverage Form and paragraph **o.**, Business Income Additional Coverage, of the Special Property Coverage Form also applies to this Business Income from Dependent Properties Additional Coverage.

5. Paragraph **s.(5)(a)**, Business Income from Dependent Properties of the Special Property Coverage Form is deleted and replaced with the following:

(a) Begins on the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the premises of the dependent property listed or scheduled in the Declarations.

## C. Limit of Insurance

The most we will pay for each occurrence of loss under this Additional Coverage is the Limit of Insurance for this coverage stated in the Declarations.

© 2005, The Hartford

When shown in the Declarations as applicable, the Limit of Insurance stated in paragraph **s.(1)** of the Additional Coverage entitled Business Income from Dependent Properties in the Special Property Coverage Form is replaced by the Limit of Insurance for Business Income from Dependent Properties shown in the Declarations.

**D. Definitions**

1. **Dependent Property** means property operated by others that you depend on to:

   a. Deliver materials or services to you to others for your account. This does not include:

      (1) Water, communication, power supply or any other utility service, or

      (2) Any type of web site or internet service.

   b. Accept your products or services;

   c. Manufacture products for delivery to your customers under contract of sale; or

   d. Attract customers to your business premises.

Form SS 04 78 07 05



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRIME COMMON CONDITIONS AND EXCLUSIONS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The following conditions are added the **Standard Property Coverage Form** and the **Special Property Coverage Form**.

**A.  CRIME COMMON CONDITIONS**

  **1.  Consolidation - Merger**

If through consolidation or merger with, or purchase of assets of, some other entity:

  **a.** Any additional persons become "employees"; or

  **b.** You acquire the use and control of any additional premises;

any insurance afforded for "employees" or premises also applies to those additional "employees" and premises, but only if you:

    **(1)** Give us written notice within 60 days thereafter; and

    **(2)** Pay us an additional premium.

  **2.  Discovery Period for Loss**

We will pay only for covered loss discovered no later than one year from the end of the policy period.

Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known.

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would be a covered loss under this policy.

  **3.  Joint Insured**

  **a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

  **b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

  **c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

  **d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

  **e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

  **4.  Legal Action Against Us**

The following replaces the Legal Action Against Us in the Property Loss Conditions:

No one may bring a legal action against us under this Coverage Part unless:

  **a.** There has been full compliance with all of the terms of this Coverage Part; and

  **b.** The action is brought within 2 years after the date on which you discover the loss .

**Form SS 04 80 03 00**                                                                 **Page 1 of 3**

© 2000, The Hartford

5. **Loss Sustained During Prior Insurance**

   a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

      (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

      (1) This insurance as of its effective date; or

      (2) The prior insurance had it remained in effect.

6. **Non-Cumulation of Limit of Insurance**

   Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

7. **Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate**

   If any loss is covered under this policy and under any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest, we will not pay more that the highest single Limit of Insurance. We will settle such claim as follows:

   a. We will first pay the Limit of Insurance applicable under this policy subject to this policy's applicable deductible; then

   b. If the Limit of Insurance under that prior policy is equal to or less than the Limit of Insurance under this policy, we will make no further payment; or

   c. If the Limit of Insurance under that prior policy is higher than the Limit of Insurance under this policy, we will then pay for any remaining part of the loss.

   But in no event will our total payment for loss be more than would be payable under the policy with the highest Limit of Insurance.

We will also apply any deductible under that prior policy to the extent it exceeds the deductible under this policy.

8. **Ownership of Property, Interests Covered**

   The property covered under this insurance is limited to property:

   a. That you own or hold; or

   b. For which you are legally liable.

   However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

9. **Policy Period**

   a. The Policy Period is stated in the Declarations.

   b. Subject to the Loss Sustained During Prior Insurance condition, **A.5.** above, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

10. **Recoveries**

    The following replaces the Recovered Property in the Property Loss Conditions:

    a. Any recoveries less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

       (1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

       (2) Then to us, until we are reimbursed for the settlement made;

       (3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

    b. Recoveries do not include any recovery:

       (1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

       (2) Of original "securities" after duplicates of them have been issued.

**B. CRIME COMMON EXCLUSIONS**

The following are Exclusions replace the Exclusions in Section B:

1. **Governmental Action**

   We will not pay for loss resulting from seizure or destruction of property by order of governmental authority.

2. **Indirect Loss**

We will not pay for loss that is an indirect result of any act or occurrence covered by this insurance including, but not limited to, loss resulting from:

a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. **Legal Expenses**

We will not pay for expenses related to any legal action.

4. **Nuclear Hazard**

We will not pay for loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. **War and Similar Actions**

We will not pay for loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

C. **CRIME COMMON DEFINTIONS**

The following is added to Definitions

**"Employee"** means:

1. Any natural person:

a. While in your service (and for 60 days after termination of service); and

b. Whom you compensate directly by salary, wages or commissions; and

c. Whom you have the right to direct and control while performing services for you;

2. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises;

3. Any natural person who is your partner or member of a limited liability corporation.

4. Any natural person, whether or not compensated, while performing services for you as the chairman or a member of any committee;

5. Any natural person who is a non-compensated officer;

6. Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting within the scope of the usual duties of an "employee";

7. Any natural person who is a non-compensated volunteer, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee";

8. Any natural person who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you;

9. Any natural person who is a student intern who is pursuing studies or acting within the scope of the usual duties of an "employee";

10. Any natural person, who is a student enrolled in your facility, while handling or has possession of property or funds in connection with sanctioned student activities;

11. The spouses of and children over 18 years old who reside with any "employee" who is a building manager, superintendent or janitor.

Each family is deemed to be, collectively, one "employee" for the purposes of this insurance, except that any Termination Condition applies individually to the spouse and children.

**"Employee" does not mean:**

(1) An agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULED PROPERTY COVERAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only if indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

### A.  COVERAGE

We will pay for direct physical loss or damage to Covered Property caused by any of the Covered Causes of Loss.

**Covered Property,** as used in this Coverage Form, means the following property owned by you or the property of others for which you are liable which is located anywhere within the policy territory:

1. On Premises Personal Property;

2. Mobile or cellular phones, beepers, pagers and related equipment and accessories;

3. Athletic, equestrian, funeral, scouting and related equipment and accessories;

4. Lodge, club, church and related equipment and accessories;

5. Catering and related equipment and accessories;

6. Musical instruments and related equipment and accessories; and

7. Cameras, projection machines, film and related equipment and accessories.

### B.  ADDITIONAL EXCLUSIONS

Exclusion **B.2.c.(6)** of the Special Property Coverage Form does not apply to photographic lenses.

### C.  LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the smallest applicable Limit of Insurance shown in:

1. The Declarations;

2. The Schedule(s);

3. The Coverage Form; or

4. This Endorsement.

If we show a Maximum Limit of Insurance, that is the most we will pay for all loss or damage in any one occurrence to Covered Property insured under this endorsement.

### D.  Deductible

We will not pay for loss or damage under this endorsement until the amount of loss or damage in any one occurrence exceeds $250. We will then pay the amount of loss or damage in excess of the $250 up to the Limit of Insurance.

**Form SS 04 85 04 01**                                                                    **Page 1 of 1**

© 2001, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FORGERY COVERAGE
### (Including Credit Cards, Currency and Money Orders)

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**The following is added to Additional Coverages:**

**A. FORGED OR ALTERED INSTRUMENTS COVERAGE**

1. **Covered Property**

   Covered Property means the following instruments:

   a. Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

      (1) Made or drawn by or drawn upon you;

      (2) Made or drawn by one acting as your agent;

      or that are purported to have been so made or drawn; and

   b. Written instruments required in conjunction with any credit, debit or charge card issued to you or any "employee" for business purposes.

2. **Covered Causes of Loss**

   Covered Causes of Loss means forgery or alteration.

3. **Legal Expense Additional Coverage**

   If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. This payment is in addition to the applicable Limit of Insurance. The Deductible does not apply to this Coverage Extension.

4. **Additional Conditions**

   The following conditions apply in addition to the Common Policy Conditions and the Crime Common Conditions and Exclusions Form.

   a. We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   b. You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

   c. The Coverage Territory is revised to cover loss you sustain anywhere in the world.

5. **Exclusion**

   The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

   We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, or trustees:

   a. Acting alone or in collusion with other persons; or

   b. While performing services for you or otherwise.

© 2000, The Hartford

**B. COUNTERFEIT CURRENCY AND MONEY ORDERS COVERAGE**

  **1. Covered Property**

    Covered Property means the following:

    We will pay for loss directly resulting from

    **a.** Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

    **b.** Counterfeit United States or Canadian paper currency.

  **2. Covered Causes of Loss**

    Covered Causes of Loss means the acceptance of Covered Property in good faith, in exchange for merchandise, money or services, during the regular course of business.

  **3. Exclusions**

    The following Exclusion applies in addition to the Exclusions in the Crime Common Conditions and Exclusions.

    **a.** We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

      **(1)** Acting alone or in collusion with other persons; or

      **(2)** While performing services for you or otherwise.

    **b.** We will not pay for loss resulting from the giving or surrendering of property in any exchange or purchase.

    **c.** We will not pay for loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**C DEDUCTIBLE**

    We will not pay for loss in any one Occurrence unless the amount of loss exceeds the **Deductible** stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D. LIMIT OF INSURANCE**

    The most we will pay for each Occurrence of loss under this Endorsement is the Forgery Limit of Insurance stated in the Declarations.

    The Additional Coverages are included in this Limit of Insurance.

**E. OCCURRENCE DEFINITION**

  **1.** For Forged or Altered Instruments Coverage, **Occurrence** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments of Covered Property.

  **2.** For Counterfeit Currency and Money Order Coverage, **Occurrence** means an:

    **a.** Act or series of related acts involving one or more persons; or

    **b.** Act or event, or series of related acts or events not involving any person.

Form SS 04 86 03 00



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFF-PREMISES UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. DIRECT DAMAGE EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only to the "scheduled premises" shown in the Declarations with a Utility Services Limit of Insurance. The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

We will pay for direct physical loss of or physical damage to Covered Property described in the Declarations caused by the interruption of utility service to the "scheduled premises". The interruption must result from direct physical loss or physical damage by a Covered Cause of Loss to the following property, not on the "scheduled premises":

1. "Water Supply Services";
2. "Communication Supply Services"; or
3. "Power Supply Services".

**B. ADDITIONAL DEFINITIONS**

1. **"Water Supply Services",** meaning the following types of property supplying water to the "scheduled premises":
   a. Pumping stations; and
   b. Water mains.
2. **"Communication Supply Services",** meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the "scheduled premises", such as:
   a. Communication transmission lines, including optic fiber transmission lines;
   b. Coaxial cables; and
   c. Microwave radio relays except satellites.
3. **"Power Supply Services",** meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the "scheduled premises":
   a. Utility generating plants;
   b. Switching stations;
   c. Substations;
   d. Transformers; and
   e. Transmission Lines.

© 2005, The Hartford

# PERILS SPECIFICALLY EXCEPTED

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

A. ACTS, ERRORS OR OMISSIONS by you or others in:

1. Planning, zoning, developing, surveying, testing or siting property;

2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;

3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

   a. Land or buildings or other structures;

   b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or

   c. Other improvements or changes in or additions to land or other property.

4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

5. The maintenance of any of such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1. Covered under this policy; or

2. On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1. If this policy is written to cover the risk of loss from specifically named causes, "Covered Peril" means any Peril specifically named as covered; or

2. If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B. COLLAPSE, "CRACKING" OR "SHIFTING" of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":

1. Occurs during "earth movement," "volcanic eruption" or "flood" conditions or within 72 hours after they cease; and

2. Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

1. Earthquake;

2. Flood;

3. Volcanic action;

4. Volcanic eruption; or

5. Sinkhole collapse,

this exception B. will not reduce that coverage.

As used in this exception B.:

Copyright, Hartford Fire Insurance Company, 1986

"Cracking" means cracking, separating, shrinking, bulging, or expanding;

2. "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;

3. "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;

4. "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;

5. "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;

6. "Flood" means:

   a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

   b. Release of water held by a dam, levy or dike or by a water or flood control device;

   c. Water that backs up from a sewer or drain; or

   d. Water under the ground surface pressing on, or flowing, leaking or seeping through:

      (1) Foundations, walls, floors or paved surfaces;

      (2) Basements, whether paved or not; or

      (3) Doors, windows or other openings.

Form IH 10 01 09 86   Printed in U.S.A.

Copyright, Hartford Fire Insurance Company, 1986



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

1. May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

3. Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form SS 05 12 03 92**   Printed in U.S.A.  (NS)

© 1992, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - NUCLEAR ENERGY LIABILITY

**1.** This insurance does not apply:

   **a.** To any injury or damage:

      **(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

         **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

         **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **b.** Under any Medical Payments or Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **c.** To any injury or damage resulting from the "hazardous properties" of "nuclear material"; if:

      **(1)** The "nuclear material":

         **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

         **(b)** Has been discharged or dispersed therefrom;

      **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      **(3)** The injury or damage arises out of the furnishing by any insured of any "technology services" in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; or

      **(4)** The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (4) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

   **a.** "Byproduct material", "source material" and "special nuclear material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   **b.** "Hazardous properties" include radioactive, toxic or explosive properties.

   **c.** "Nuclear facility" means:

      **(1)** Any "nuclear reactor";

      **(2)** Any equipment or device designed or used for:

© 2001, The Hartford

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing "spent fuel"; or

(c) Handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

d. "Nuclear material" means "byproduct material", "source material" or "special nuclear material".

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. Injury or damage and "property damage" include all forms of radioactive contamination of property.

g. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

h. "Technology services" means:

(1) Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(2) Integration of systems;

(3) Processing of, management of, mining or warehousing of data;

(4) Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

(5) Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(6) Design and development of: code, software or programming; or

(7) Providing software application: services, rental or leasing.

i. "Waste" means any waste material:

(1) Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(2) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

Form SS 05 47 09 01

**POLICY NUMBER:** 01 SBA AJ5654



## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SCHEDULED PROPERTY SCHEDULE

```
                    SCHEDULED PROPERTY SCHEDULE
                              TOTAL VALUE $ $6,400
        LOC/BLDG         DESCRIPTION OF ITEM          VALUE
001/001  CLARK FORKLIFT MODEL EC50050F SERIAL#E23504447888   $6,400
```

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES - BUSINESS LIABILITY

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

**A.** Paragraph **A.1.a.** of the Business Liability Coverage Form is deleted and replaced by the following:

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

  **(1)** The amount we will pay for damages is limited as described in SECTION **D.** - LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE; and

  **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS.

**B.** The following is added to the Duties In The Event of Occurrence, Claim or Suit LIABILITY AND MEDICAL EXPENSES GENERAL CONDITION in the Business Liability Coverage Form:

  **a.** Notice given by or on your behalf; or

  **b.** Written notice by or on behalf of any claimant;

to any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

**C.** The Legal Action Against Us Condition of LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS in the Business Liability Coverage Form is replaced by the following:

**Legal Action Against Us**

No person or organization has a right under this policy:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this policy unless all of its terms have been fully compiled with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of damages signed by us, the insured and the claimant or the claimant's legal representative.

**D.** The definition of "Loading or Unloading" in Section **G.** LIABILITY AND MEDICAL EXPENSES DEFINITION in the Business Liability Coverage Form does not apply.

**E.** In section **G.** Liability and Medical Expenses Definitions of the Business Liability Coverage Form, paragraph **f.(1)** in item **13.** "Mobile Equipment" is deleted and replaced by the following:

  **(1)** Equipment designed primarily for:

    **a.** Snow removal;

    **b.** Road maintenance, but not construction or resurfacing; or

    **c.** Street cleaning.

**Form SS 10 05 03 00**

Page 1 of 2

© 2000, The Hartford

F.  In section **G.** Liability and Medical Expenses Definitions of the Business Liability Coverage Form paragraph **h.** in item **15.** "Personal and Advertising Injury" is deleted and replaced by the following:

**h.**  Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if:

**(1)**  Such discrimination or humiliation is:

**(a)**  Not done intentionally by or at the direction of the insured; or any "executive officer", director, stockholder, partner or member of the insured; and

**(b)**  Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by the insured.

**(2)**  Acts of discrimination are based solely on either disparate impact (as opposed to disparate treatment) or vicarious liability.

Coverage provided in this paragraph does not apply if Personal and Advertising Injury Liability has been excluded from this policy.

**G.**  It is agreed that, subject to all terms, conditions, exclusions and definitions of the policy not expressly modified below, this policy provides coverage for "bodily injury" and "property damage":

(1)  Arising out of an intentional or willful act;

(2)  Caused by an "occurrence" as defined below; and

(3)  For which the insured is legally liable.

Solely for the purposes of the coverage provided above, "occurrence" means:

From the standpoint of the insured, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under the Standard Property Coverage Form and the Special Property Coverage Form, and to any endorsements modifying those forms, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**Form SS 50 19 06 03**                                    **Page 1 of 1**

© 2003, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

**A.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Form SS 50 30 06 03**                                                                                     **Page 1 of 1**

© 2003, The Hartford

**Insurer:** HARTFORD INSURANCE COMPANY OF THE MIDWEST
HARTFORD PLAZA, HARTFORD, CT 06115



This Declarations Page, with Policy Provisions Form SX 80 02 and Endorsements, if any, issued to form a part thereof, shall together constitute this Umbrella Liability Supplemental Contract, which in turn forms a part of Policy Number shown below.

None of the provisions of the policy to which this Supplemental Contract is attached applies to the Umbrella Liability Insurance provided hereunder.

Wherever the word "policy" appears in this form or in endorsements attached to or made a part of this Supplemental Contract, it means "Supplemental Contract".

**POLICY NUMBER:** 01 SBA AJ5654

## DECLARATIONS

**Named Insured and Mailing Address:**   MONTAMER CORPORATION

110 BRENNER DRIVE
CONGERS               NY 10920

**Policy Period**          **From:** 12/01/05  **To:** 12/01/06
**12:01 A.M., Standard time at the address of the named insured as stated herein.**

**Premium**                **$ INCLUDED** ADVANCE PREMIUM

Self Insured Retention         $10,000      each occurrence

The Limits of Insurance subject to all the terms of this policy that apply are:

| | | | |
|---|---|---|---|
| Each Occurrence | $ 4,000,000 | Products-Completed Operations Aggregate Limit | $ 4,000,000 |
| General Aggregate Limit (Other than Products - Completed Operations, Bodily Injury By Disease and Automobile) | $ 4,000,000 | Bodily Injury By Disease Aggregate Limit | $ 4,000,000 |

**Schedule of Underlying Insurance Policies**
*See Attached "Extension Schedule of Underlying Insurance Policies"*

**Form Numbers of Forms and Endorsements that apply.**

| | | | |
|---|---|---|---|
| SX80120703 | SX80020401 | SX80040300 | SX01030901 |
| SX21090603 | SX21610697 | SX21750697 | SX22100300 |
| SX24010401 | | | |

Countersigned by   *Margie K. Ape*                     09/20/05
              Authorized Representative                 Date

**Form SX 80 01 06 97 T** Printed in U.S.A. (NS)
**Process Date:** 09/20/05              **Policy Expiration Date:** 12/01/06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

Paragraph **A.** of INSURING AGREEMENTS (SECTION **I** – COVERAGES) is replaced by the following:

**INSURING AGREEMENTS**

**A.  Umbrella Liability Insurance**

1.  We will pay those sums that the "insured" becomes legally obligated to pay as "damages":

    a.  In excess of the "underlying insurance"; or of

    b.  The "self-insured retention" when no "underlying insurance" applies,

    because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies, caused by an "occurrence".  But, the amount we will pay as "damages" is limited as described in SECTION **IV** – LIMITS OF INSURANCE.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION **II** – INVESTIGATION, DEFENSE, SETTLEMENT.

2.  This insurance applies to:

    a.  "Bodily injury" and "property damage" only if the "bodily injury" or "property damage" occurs during the "policy period".

    b.  "Personal and advertising injury" caused by an offense arising out your business, but only if the offense was committed during the "policy period".

© 2003, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UMBRELLA LIABILITY PROVISIONS

This supplemental contract modifies insurance provided under the policy to which it is attached.

In this policy the words "you" and "your" refer to the Named Insured first shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. "We", "us" and "our" refer to the stock insurance company member of The Hartford Financial Services Group Inc. shown in the Declarations.

Other words and phrases that appear in quotation marks also have special meanings. Refer to DEFINITIONS (Section VII).

IN RETURN FOR THE PAYMENT OF THE PREMIUM, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, we agree with you as follows:

## SECTION I - COVERAGES

### INSURING AGREEMENTS

**A. Umbrella Liability Insurance**

We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance", or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

**B. Exclusions**

This policy does not apply to:

**1. Pollution**

To any obligation:

**a.** To pay for the cost of investigation, defense or settlement of any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

**b.** To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

  **i.** By reason of any such claim or "suit" or any such injury or damage; or

  **ii.** In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

**a.** Pollutants;

**b.** Contaminants;

**c.** Irritants; or

**d.** Toxic substances;

Including:

Smoke;

Vapors;

Soot;

Fumes;

Acids;

Alkalis;

Chemicals, and

Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

**EXCEPTION**

This exclusion does not apply:

**a.** To "bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

**b.** To injury or damage as to which valid and collectible "underlying insurance" with at least the minimum limits shown in the Schedule of

© 2001, The Hartford

Underlying Insurance Policies is in force and applicable to the "occurrence". In such event, any coverage afforded by this policy for the "occurrence" will be subject to the pollution exclusions of the "underlying insurance" and to the conditions, limits and other provisions of this policy.    In the event that "underlying insurance" is not maintained with limits of liability as set forth in the Extension Schedule of Underlying Insurance Policies, coverage under any of the provisions of this exception does not apply.

Exception b. does not apply to:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

    **a.** Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

    **b.** Otherwise in the course of transit by or on behalf of the "insured"; or

    **c.** Being stored, disposed of, treated or processed in or upon any "auto";

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned the "insured".

Paragraph **(1)** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

**(a)** The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(b)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs **(2)** and **(3)** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

2. **Workers Compensation and Similar Laws**

To any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, except for liability of others assumed by the "insured" under any contract or agreement.

3. **Contractual Liability**

To liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

4. **Personal and Advertising Injury**

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

5. **Underlying Insurance**

To any injury or damage:

    **a.** Covered by "underlying insurance" but for any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

    **b.** For which "damages" would have been payable by "underlying insurance" but for the actual or alleged insolvency or financial impairment of an underlying insurer.

6. **Aircraft**

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any aircraft:

    **a.** Owned by any "insured"; or

    **b.** Chartered or loaned to any "insured".

Form SX 80 02 04 01

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any aircraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to aircraft that is:

a.  Hired, chartered or loaned with a paid crew; but

b.  Not owned by any "insured".

This exclusion does not apply to "bodily injury" to any of your "employees" arising out of and in the course of their employment by you.

### 7. Watercraft

To "bodily injury" or "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others, of any watercraft that is owned or operated by or rented or loaned to, any insured.

This exclusion does not apply to:

a.  Watercraft you do not own that is:

  i.  Less than 51 feet long; and

  ii.  Not being used to carry persons for a charge;

b.  "Bodily injury" to any of your "employees" arising out of and in the course of their employment by you; or

c.  Any watercraft while ashore on premises owned by, rented to or controlled by you.

### 8. War

To "bodily injury" or "property damage" due to war (whether war be declared or not). War includes invasion, act of foreign power, hostilities, civil war, rebellion, revolution, riot, riot attending a strike, civil commotion, insurrection or military power.

This exclusion applies only to "occurrences" which take place outside the United States of America, its territories or possessions, Puerto Rico or Canada.

### 9. Damage to Property

To "property damage" to property you own.

### 10. Damage to Your Product

To "property damage" to "your product" arising out of it or any part of it.

### 11. Damage to Your Work

To "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### 12. Damage to Impaired Property or Property Not Physically Injured

To "property damage" to "impaired property" or property that has not been physically injured arising out of:

1.  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### 13. Recall of Products, Work or Impaired Property

To "damages" claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.  "Your product";

b.  "Your work"; or

c.  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### 14. Employer Liability

With respect to coverage afforded any of your employees to "bodily injury" or "personal and advertising injury":

a.  To other "employees" arising out of and in the course of their employment;

b.  The spouse, child, parent, brother or sister of that "employee" as a consequence of such "bodily injury" to that "employee";

**UMBRELLA LIABILITY PROVISIONS**

c. To you, or any of your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company); or

d. Arising out of the providing or failing to provide professional health care services.

**EXCEPTION**

Subparagraphs **a.** and **b.** of this exclusion apply:

a. Whether the "insured" may be liable as an employer or in any other capacity; and

b. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

Subparagraphs **a.** and **b.** of this exclusion do not apply if "underlying insurance" is maintained providing coverage for such liability with minimum underlying limits, as described in the Schedule of Underlying Insurance Polices.

15. **Property Damage to Employee's Property**

With respect to coverage afforded any of your "employees" to "property damage" to property owned or occupied by or rented or loaned to:

a. That "employee";

b. Any of your other "employees";

c. Any of your partners or members (if you are a partnership or joint venture);

d. Any of your members (if you are a limited liability company);

16. **Uninsured or Underinsured Motorists**

To any claim for:

a. Uninsured or Underinsured Motorists Coverage;

b. Personal injury protection;

c. Property protection; or

d. Any similar no-fault coverage by whatever name called;

unless this policy is endorsed to provide such coverage.

17. **Employment Practices Liability**

For any injury or damage to:

1. A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation,

harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

i. Whether the "insured" may be liable as an employer or in any other capacity; and

ii. To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

18. **Expected or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**SECTION II – INVESTIGATION, DEFENSE, SETTLEMENT**

A. With respect to "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies (whether or not the "self-insured retention" applies) and

1. For which no coverage is provided under any "underlying insurance"; or

2. For which the underlying limits of any "underlying insurance" policy have been exhausted solely by payments of "damages" because of "occurrences" during the "policy period",

We:

1. Will have the right and the duty to defend any "suit" against the "insured" seeking "damages" on account thereof, even if such "suit" is groundless, false or fraudulent; but our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under coverages afforded by this policy;

2. May make such investigation and settlement of any claim or "suit" as we deem expedient;

3. Will pay all expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before we have paid or tendered or deposited in court that part of the judgment which does not exceed the applicable limit of insurance;

Form SX 80 02 04 01

**UMBRELLA LIABILITY PROVISIONS**

4. Will pay all premiums on appeal bonds required in any such "suit", premiums on bonds to release attachments in any such "suit" for an amount not in excess of the applicable limit of insurance, and the cost of bail bonds required of the "insured" because of an accident or traffic law violation arising out of the operation of any vehicle to which this policy applies, but we will have no obligation to apply for or furnish any such bonds;

5. Will pay all reasonable expenses incurred by the "insured" at our request in assisting us in the investigation or defense of any claim or "suit", including actual loss of earnings not to exceed $500 per day per "insured";

and the amounts so incurred, except settlement of claims and "suits", are not subject to the "self-insured retention" and are payable in addition to any applicable limit of insurance.

The "Insured" agrees to reimburse us promptly for amounts paid in settlement of claims or "suits" to the extent that such amounts are within the "self-insured retention".

B. You agree to arrange for the investigation, defense or settlement of any claim or "suit" in any country where we may be prevented by law from carrying out this agreement. We will pay defense expenses incurred with our written consent in connection with any such claim or "suit" in addition to any applicable limit of insurance. We will also promptly reimburse you for our proper share, but subject to the applicable limit of insurance, of any settlement above the "self-insured retention" made with our written consent.

C. If a judgment is rendered in excess of the limits of "underlying insurance" and we are willing to contribute to it but the underlying insurers elect to appeal it:

1. The cost and the duty of obtaining an appeal bond with respect to liability in excess of the limits of "underlying insurance"; and

2. The taxable costs, disbursements and additional interest incidental to such appeal;

shall be borne by the "Insured" and its underlying insurers.

D. We will have the right to associate at our expense with the "insured" or any underlying insurer in the investigation, defense or settlement of any claim or "suit" which in our opinion may require payment hereunder. In no event, however, will we contribute to the cost and expenses incurred by any underlying insurer.

## SECTION III - WHO IS AN INSURED

A. If you are doing business as:

1. An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

3. A limited liability company, you are an "insured". Your members are also "insureds", but with only respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

4. An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

5. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

B. Each of the following is also an "insured":

1. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts:

   a. Within the scope of their employment by you or while performing duties related to the conduct of your business; and

   b. Only if such "employees" are insureds in the "underlying insurance" with limits of liability at least as high as set forth in the Extension Schedule of Underlying Insurance Policies, subject to all the limitations upon coverage and all other policy terms and conditions of such "underlying insurance" and this policy.

2. Any person or organization with whom you agreed, because of a written contract, agreement or permit, to provide insurance, such as is afforded under this supplemental contract, but only with respect to your operations, "your work" or facilities owned or used by you. This provision does not apply unless the written contract or agreement has been executed, or the permit has been issued prior to the "bodily injury", "property damage", or "personal and advertising injury".

3. Any person or organization having proper temporary custody of your property if you die, but only:

UMBRELLA LIABILITY PROVISIONS

**a.** With respect to liability arising out of the maintenance or use of that property; and

**b.** Until your legal representative has been appointed.

**4.** Your legal representative if you die, but only with respect to his or her duties as such. That representative will have all your rights and duties under this policy.

**C.** With respect to any "auto", any "insured" in the "underlying insurance" is an "insured" under this insurance policy, subject to all the limitations of such "underlying insurance".

**D.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**1.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**2.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**E.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will be deemed to be an "insured" if there is no other similar insurance available to that organization.

However:

**1.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

**2.** This insurance does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**3.** This insurance does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**F.** Each person or organization, not included as an "insured" in Paragraphs **A., B., C., D.,** or **E.,** who is an "insured" in the "underlying insurance" is an "insured" under this insurance subject to all the limitations, other than the limits of the underlying insurer's liability, of such "underlying insurance".

No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

With respect to any person or organization who is not an "insured" under "underlying insurance", coverage under this policy shall apply only to loss in excess of the amount of the "underlying insurance" or "self-insured retention" applicable to you.

**SECTION IV - LIMITS OF INSURANCE**

**A.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made or "suits" brought; or

**3.** Persons or organizations making claims or bringing "suits".

**B.** The Limit of Insurance stated as the General Aggregate Limit is the most we will pay for the sum of "damages", other than "damages":

**1.** Because of injury or damage included within the "products-completed operations hazard";

**2.** Because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you; and

**3.** Because of "bodily injury" and "property damage" arising out of the ownership, operation, maintenance, use, entrustment to others, loading or unloading of any "auto".

**C.** The Limit of Insurance stated as the Products Completed Operations Aggregate Limit is the most we will pay for "damages" because of injury or damage included within the "products-completed operations hazard".

**D.** The Limit of Insurance stated as the Bodily Injury By Disease Aggregate Limit is the most we will pay for "damages" because of "bodily injury" by disease to your "employees" arising out of and in the course of their employment by you.

**E.** Subject to **B., C.,** or **D.** above, whichever applies, the Each Occurrence Limit is the most we will pay for "damages" because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence".

**F.** Our obligations under this insurance end when the applicable Limit of Insurance available is used up. If we pay any amounts for "damages" in excess of that Limit of Insurance, you agree to reimburse us for such amounts.

G. The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations. However, if the "policy period" is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

## SECTION V - NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

A. The insurance does not apply:

1. To "bodily injury" or "property damage":

   a. With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. To "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

   a. The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

B. As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

---

**Form SX 80 02 04 01**

UMBRELLA LIABILITY PROVISIONS

## SECTION VI - CONDITIONS

### A. Premium

All premiums for this policy shall be computed in accordance with the Premium Section of the Declarations. The premium stated as such in the Declarations is a deposit premium only which shall be credited to the amount of any earned premium. At the close of each "policy period", the earned premium shall be computed for such period, and upon notice thereof to the Named Insured first shown in the Declarations shall become due and payable by such Named Insured. If the total earned premium for the "policy period" is less than the premium previously paid and more than the minimum premium, we shall return to such Named Insured the unearned portion paid by such Named Insured.

The Named insured first shown in the Declarations shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to us at the end of the "policy period" and at such times during the "policy period" as we may direct.

### B. Inspection and Audit

We shall be permitted but not obligated to inspect your property and operations at any time. Neither our right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on your behalf or for your benefit or that of others to determine or warrant that such property or operations are:

1. Safe;
2. Healthful; or
3. In compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the "policy period" and extensions thereof and within three years after the final termination of this policy, insofar as they relate to the subject matter of this policy.

### C. Duties In The Event Of Occurrence, Claim or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this policy. This requirement applies only when such "occurrence" is known to any of the following:

    (a) You, if you are an individual;

    (b) A partner, if an insured is a partnership;

    (c) A manager, if a limited liability company; or

    (d) An "executive officer" or insurance manager, if you are a corporation.

To the extent possible, notice should include:

(a) How, when and where the "occurrence" took place;

(b) The names and addresses of any injured persons and witnesses; and

(c) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us in writing as soon as practicable if the claim is likely to exceed the amount of the "self-insured retention" or "underlying insurance", whichever applies.

3. You and any other involved insured must:

    (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies";

    (b) Authorize us to obtain records and other information;

    (c) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (d) Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this policy or any "underlying insurance" or "self-insured retention" may apply.

4. No insured will, except at that insured's own cost, make or agree to any settlement for a sum in excess of:

    (a) The total limits of "underlying insurance"; or

    (b) The "self-insured retention" if no "underlying insurance" applies

    without our consent.

5. No insureds will, except at that insured's own cost, make a payment, assume any obligation, or incur any expenses, other than first aid, without our consent.

### D. Assistance and Cooperation of the Insured

The "insured" shall:

1. Cooperate with us and comply with all the terms and conditions of this policy; and

**UMBRELLA LIABILITY PROVISIONS**

2. Cooperate with any of the underlying insurers as required by the terms of the "underlying insurance" and comply with all the terms and conditions thereof.

The "insured" shall enforce any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of "bodily injury", "property damage" or "personal and advertising injury" with respect to this policy or any "underlying insurance".

### E. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms and those of the "underlying insurance" have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### F. Appeals

In the event the "insured" or the "insured's" underlying insurer elects not to appeal a judgment in excess of the "underlying insurance" or the "self-insured retention", we may elect to make such appeal, at our cost and expense. If we so elect, we shall be liable in addition to the applicable Limit of Insurance, for the:

1. Taxable costs;

2. Disbursements; and

3. Additional interest incidental to such appeal;

but in no event will we be liable for "damages" in excess of the applicable aggregate Limit of Insurance.

### G. Other insurance

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;

2. Contributing;

3. Excess; or

4. Contingent;

Provided that if such other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to "damages".

However, we shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of:

1. Said amount; and

2. The amounts which would have been payable under each other umbrella policy applicable to such loss, had each such policy been the only policy so applicable.

### H. Transfer Of Rights Of Recovery Against Others To Us

a. If the insured has rights to recover all or a part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after a loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. Recoveries shall be applied to reimburse:

(1) First, any interest (including the Named Insured) that paid any amount in excess of our limit of liability:

(2) Second, us, along with any other insurers having a quota share interest at the same level;

(3) Third, such interests (including the Named Insured) of whom this insurance is excess.

However, a different apportionment may be made to effect settlement of a claim by agreement signed by all interests.

c. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

### I. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. Notice to any agent, or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy.

The Named Insured first shown in the Declarations is authorized on behalf of all "insureds" to agree with us on changes in the terms of this policy.

If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

**J.    Separation Of Insureds**

Except with respect to the Limits of Liability, and any rights or duties specifically assigned in this policy to the Named Insured first shown in the declarations, this insurance applies:

**a.**   As if each Named Insured were the only Named Insured: and

**b.**   Separately to each insured against whom claim is made or "suit" is brought.

**K.    Maintenance of Underlying Insurance**

Policies affording in total the coverage and limits stated in the Schedule of Underlying Insurance Policies shall be maintained in full effect during the currency of this policy. Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent that we would have been liable had you complied herewith.

The Named Insured first shown in the Declarations shall give us written notice as soon as practicable of any of the following:

**1.**   Any change in the coverage or in the limits of any "underlying insurance", including but not limited to a change from occurrence coverage to claims made coverage;

**2.**   Termination of part or all of one or more of the policies of "underlying insurance";

**3.**   Reduction or exhaustion of an aggregate limit of liability of any "underlying insurance".

The "self-insured retention" shall not apply should the "underlying insurance" be exhausted by the payment of claims or "suits" which are also covered by this policy.

**L.    Cancellation**

**1.**   The Named Insured first shown in the Declarations may cancel this policy by mailing or delivering to us or to any of our authorized agents advance written notice of cancellation.

**2.**   We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations at the address shown in this policy, written notice of cancellation at least:

**a.**   10 days before the effective date of cancellation if such Named Insured fails to pay the premium or any installment when due; or

**b.**   30 days before the effective date of cancellation if we cancel for any other reason.

**3.**   If notice is mailed, proof of mailing will be sufficient proof of notice. Notice will state the effective date of cancellation. The "policy period" will end on that date. Delivery of such notice by the Named Insured first shown in the Declarations or by us will be equivalent to mailing.

**4.**   If the Named Insured first shown in the Declarations cancels, the refund may be less than pro rata, but we will retain any minimum premium stated as such in the Declarations. If we cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**M.    Nonrenewal**

**1.**   If we decide not to renew, we will mail or deliver to the Named Insured first shown in the Declarations, at the address shown in this policy, written notice of nonrenewal at least 30 days before the end of the "policy period".

**2.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.**   If we offer to renew but such Named Insured does not accept, this policy will not be renewed at the end of the current "policy period".

**N.    Workers' Compensation Agreement**

With respect to "bodily injury" to any officer or other employee arising out of and in the course of employment by you, you represent and agree that you have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation Law by rejection of such law or otherwise. If at any time during the "policy period" you abrogate such defenses, the insurance for "bodily injury" to such officer or other employee automatically terminates at the same time.

**O.    Bankruptcy or Insolvency**

In the event of the bankruptcy or insolvency of the "insured" or any entity comprising the "insured", we shall not be relieved of any of our obligations under this policy.

**P.    Representations**

By accepting this policy, you agree:

**a.**   The statements in the Declarations are accurate and complete;

**b.**   The statements in the Extension Schedule Of Underlying Insurance Policies are accurate and complete;

**c.**   The statements in a. and b. are based upon representations you made to us:

**UMBRELLA LIABILITY PROVISIONS**

d. We have issued this policy in reliance upon your representations; and

e. If unintentionally you should fail to disclose all hazards at the inception of this policy, we shall not deny coverage under this policy because of such failure.

## SECTION VII - DEFINITIONS

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

"**Accident**" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

"**Auto**" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

"**Covered pollution cost or expense**" means any cost or expense arising out of:

1. Any request, demand or order; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) That are, or that are contained in any property that is:

    a. Being transported or towed by, handled, or handled for movement into, onto or from, any "auto";

    b. Otherwise in the course of transit by or on behalf of the "insured"; or

    c. Being stored, disposed of, treated or processed in or upon any "auto"; or

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto any "auto"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from any "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto", covered by the "underlying insurance" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs **6.b** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an "auto" covered by the "underlying insurance" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of the "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

"**Damages**" include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

"Damages" do not include:

1. Fines;

2. Penalties; or

3. Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:

1. Death;

2. Mental anguish;

3. Shock;

4. Disability; or

5. Care and loss of services or consortium.

"**Insured**" means any person or organization qualifying as an insured in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each "insured" against whom claim is made or "suit" is brought, except with respect to the limit of our liability under LIMITS OF INSURANCE (SECTION IV).

"**Occurrence**" means:

1. With respect to "bodily injury" or "property damage": an

**UMBRELLA LIABILITY PROVISIONS**

accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured" and includes the use of reasonable force to protect persons or property; and

2. With respect to "personal and advertising injury" an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

**"Policy period"** means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

1. The date of cancellation of this policy; or

2. The expiration date stated as such in the Declarations.

**"Self-insured retention"** means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".

**"Underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which

provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1. Any deductible amount;

2. Any participation of any "insured"; and

3. Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance". The coverages and limits of such policies and any such deductible amount, participation or "self-insured retention" shall be deemed to be applicable regardless of:

1. Any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

2. The actual or alleged insolvency or financial impairment of any underlying insurer or any "insured".

The risk of insolvency or financial impairment of any underlying insurer or any "insured" is borne by you and not by us.

Form SX 80 02 04 01

# EXTENSION SCHEDULE OF UNDERLYING INSURANCE POLICIES



This extension schedule forms a part of the policy designated in the Declarations.

**Carrier, Policy Number and Policy Period:**

**A.** HARTFORD INSURANCE COMPANY OF THE MIDWEST

01 SBA AJ5654    12/01/05  TO 12/01/06

| Type of Coverage | Applicable Limits | |
|---|---|---|
| ( X ) Comprehensive Business Liability - including: | Bodily Injury and Property Damage Liability Combined | |
| | $1,000,000 | each occurrence |
| | $2,000,000 | general aggregate |
| Employees as Additional Insureds | | |
| Contractual Liability | | |
| Limited Non-Owned Watercraft | | |
| Non-Owned Snowmobiles | | |
| Additional Insureds | | |
| Damages To Premises Rented To You | Property Damage Liability | |
| | $  300,000 | each occurrence |
| ( X ) Personal Injury | $1,000,000 | |
| ( X ) Advertising Injury | $1,000,000 | |
| ( X ) Products/Completed Operations | $2,000,000 | Prod./Comp. Ops. aggregate |
| ( ) Non-Owned Automobile - Hired Car | | Limit of Liability |

**B.** HARTFORD FIRE INSURANCE COMPANY    01UECGE8370    12/01/05  TO 12/01/06

| | | |
|---|---|---|
| ( X ) Comprehensive Automobile Liability - | Bodily Injury Liability | |
| Owned Automobiles | | each person |
| | | each accident |
| | Property Damage Liability | |
| ( ) Non-Owned Automobiles | | each accident |
| | Bodily Injury and Property Damage | |
| ( ) Hired Automobiles | $1,000,000 | Liability Combined each accident |
| ( ) Uninsured Motorist | | each occurrence |

**C.** HARTFORD UNDERWRITERS INSURANCE CO    01WECKR2827    12/01/05  TO 12/01/06

| | | |
|---|---|---|
| ( X ) Employers' Liability | $  500,000 | each accident* |
| | $  500,000 | each employee by disease* |
| | $  500,000 | total policy by disease* |

**D.**

~~( ) Liquor Law Legal Liability~~

An "X" marked in the box indicates the coverage is provided in the Underlying Policies.

**(Note Maintenance of Underlying Insurance Condition SX 80 02.)**

*Except that in any jurisdiction where the amount of Employers Liability Coverage afforded by the underlying insurer is by law unlimited, the limit stated does not apply and the policy of which this extension schedule forms a part shall afford no insurance with respect to Employers Liability in such jurisdiction.

**Form SX 80 04 03 00**  Printed in U.S.A.  **(NS)**

**Process Date:** 09/20/05                    **Policy Expiration Date:** 12/01/06

UW COPY

16224

*0100001AJ5654O106

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES

This endorsement modifies insurance provided under the following:

SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT

It is agreed that:

1. The **CANCELLATION** Condition is replaced by the following:

   **CANCELLATION**

   a. The Named Insured first shown in the Declarations may cancel this policy by:

      (1) Mailing or delivering to us advance written notice of cancellation; or

      (2) Surrendering the policy to us or to any of our authorized agents.

   b. We may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations and his or her agent or broker written notice of cancellation at least:

      (1) 30 days before the effective date of cancellation, if we cancel for any reason and the policy has been in effect for 60 days or less and is not a renewal with us; or

      (2) 15 days before the effective date of cancellation, if we cancel and the policy has been in effect for more than 60 days, but only for one or more of the following reasons:

         (a) Non-payment of premium;

         (b) Conviction of a crime arising out of acts increasing the hazard insured against;

         (c) Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

         (d) After issuance of the policy or after the last renewal date, discovery of an act or omission or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "policy period";

         (e) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed;

         (f) Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

         (g) A determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

         (h) A determination by the Superintendent that the continuation of the policy would violate, or place us in violation of any of the New York Insurance Laws; or

         (i) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk or danger that you will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds, provided that any cancellation notice based on this reason:

**Form SX 01 03 09 01**

© 2001, The Hartford

**Page 1 of 5**

    **(i)** Is provided simultaneously to the Insurance Department; and

    **(ii)** Informs you in plain language that you may request a review of the cancellation by the Department within 10 days of receipt of the notice.

**c.** We will mail or deliver our notice to the last mailing address known to us of the Named Insured first shown in the Declarations. If notice is mailed, proof of mailing will be sufficient proof of notice.

**d.** Notice of cancellation by us will state the effective date of cancellation. The "policy period" will end on that date.

**e.** If this policy is cancelled, we will send the Named Insured first shown in the Declarations any premium refund due. If we cancel, the refund will be pro-rata.

**f.** If the Named Insured cancels, we shall compute the return premium at 90% of the pro-rata unearned premium.

**g.** However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**h.** Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**2.** The **NONRENEWAL** Condition is replaced by the following:

**NONRENEWAL**

**a.** If we decide not to renew this policy, we will mail or deliver written notice of non-renewal to the Named Insured first shown in the Declarations and his or her agent or broker, between 60 and 120 days before the end of the "policy period".

**b.** If notice is mailed, we will mail it to the last mailing address known to us of the Named Insured first shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**3.** The following conditions are added to the policy:

**A.** **NOTICE OF PREMIUM OR COVERAGE CHANGE**

If we elect to increase the policy premium by more than 10% (not including increases due to experience rating, retrospective rating, policies subject to audit or insured value added), change a deductible, reduce limits or make any change in coverage less favorable to the insured, we will mail or deliver to the Named Insured first shown in the Declarations and his or her agent or broker, written notice of such change as provided in paragraph **3.B.** below.

**B.** **NOTICE OF NONRENEWAL OR CONDITIONAL RENEWAL**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in paragraph 3.A. above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

    (1) The expiration date; or

    (2) The anniversary date if this is a continuous policy.

**b.** If notice is mailed, we will mail it to the last mailing address known to us of the Named Insured first shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of paragraph **3.B. a.**, **b.**, or **c.** above by sending the first Named Insured an incomplete or late conditional renewal or nonrenewal notice:

    (1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

    (2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured during this additional policy period, has replaced the coverage or elects to cancel.

e.  We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

4.  **Conforms to New York Insurance Laws or Regulations**.

As respects coverage for operations in the state of New York, it is agreed that all terms and conditions of this policy shall conform to the coverage requirements of the applicable:

a.  Insurance law of the state of New York; or

b.  Published regulations of the New York Insurance Department

provided however; that the Company's limit of insurance as stated in this policy shall be excess of the Limits of Insurance of any Underlying Insurance or Self-Insured Retention as stated in:

a.  The Declarations;

b.  Any endorsement; or

c.  Any extension schedule(s) attached hereto.

5.  It is hereby agreed and understood that if checked by an (x), item **C., Employers' Liability**, on form SX 80 04, Extension Schedule of Underlying Insurance, is not applicable to employees subject to the Worker's Compensation Law.

6.  The last sentence of paragraph **G. of SECTION IV - LIMITS OF INSURANCE**, is replaced by the following:

However, if the policy period is extended after issuance for an additional period of less than 12 months, the annual aggregate limit of the expiring policy shall be increased in proportion to the policy expiration.

7.  **Intentional Acts Exclusion**

This policy does not apply to "bodily injury" or "property damage" caused intentionally by or at the direction of the "insured" but this exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the lawful protection of your employees, tenants, guests or property.

8.  Exclusions 2. and 14. of **SECTION I - COVERAGES** are deleted and replaced by the following:

This policy does not apply to any injury or damage to:

a.  Any "insured" or any "employee" of any "insured" arising out of or in the course of employment by any "insured;" or

b.  The spouse, child, parent, brother or sister of the "employee" as a consequence of a. above; or

c.  To you or any of your partners or members (if you are a partnership or joint venture), or your members (if you are a limited liability company).

This exclusion applies:

(1)  Whether any "insured" may be liable as an employer or in any other capacity;

(2)  Whether or not liability for a., b. or c. above is assumed by any "insured" under any contract or agreement; or

(3)  To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury or damages.

9.  The following **EXCEPTION** is deleted from **Exclusions 1., 6.** and **7.** of **SECTION I - COVERAGES**.

"Bodily injury" to any of your "employees" arising out of and in the course of their employment by you.

10.  **SECTION I – COVERAGES** - The following exclusion is added:

To injury or damage due to discrimination because of race, creed, color, national origin, gender, sexual orientation or religion.

11.  **Consent to Settle**

**SECTION II - INVESTIGATION, DEFENSE, SETTLEMENT** is amended by deleting the second paragraph **A.2.** and adding the following:

We may make such investigation and settlement of any claim or "suit" as we deem expedient, except when the claim involves the "self-insured retention", if any, in which case we will request the consent of the "insured" prior to a settlement.

However, if you refuse to settle a claim or "suit", our liability to pay such claim or "suit" will not exceed the amount for which the claim or "suit" could have been settled up to the date of your refusal of a written settlement.

12.  The following paragraph is added to the **Duties in The Event Of Claim or Suit** Condition:

Notice given by or on behalf of the "insured", or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the "insured", shall be considered to be notice to us.

13. The following **CONDITION** is added:

**Transfer of Duties When Limit of Insurance is Used Up**

a. If we conclude that, based on "occurrences", claims or "suits" which have been reported to us and to which this insurance may apply, the:

    (1) General Aggregate Limit;

    (2) Products-Completed Operations Aggregate Limit;

    (3) Bodily Injury by Disease Aggregate Limit; or

    (4) Each Occurrence Limit

is likely to be used up in the payment of judgments or settlements, we will notify the Named Insured first shown in the Declarations, in writing to that effect.

b. When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

    (1) We will notify the Named Insured first shown in the Declarations, in writing, as soon as practicable, that:

        a. Such limit has actually been used up; and

        b. Our duty to defend "suits" seeking "damages" subject to that limit has also ended.

    (2) We will initiate and cooperate in the transfer of control to any appropriate insured, of all claims and "suits" seeking "damages" which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits". We agree to take such steps as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed provided that the appropriate insured is cooperating in completing such transfer. We will take no action whatsoever with respect to any claim or "suit" seeking "damages" that would have been subject to that limit had it not been used up if the claim or "suit" is reported to us after that limit of insurance has been used up.

    (3) The Named Insured first shown in the Declarations, and any other insured involved in a "suit" seeking "damages" subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. In the absence of any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c. The Named Insured first shown in the Declarations will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the Named Insured first shown in the Declarations to reimburse us will begin on:

    (1) The date of which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

    (2) The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph **a.** above.

d. The exhaustion of any limit of insurance by the payment of judgments or settlements and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

14. **SECTION VI,** Condition **O. Bankruptcy or Insolvency,** is replaced by the following:

In the event of the bankruptcy or insolvency of the "insured" or insolvency of the "insured estate", or any entity comprising the "insured", we shall not be relieved of any of our obligations under this policy.

15. **Section VI. Condition G. Other Insurance is replaced by the following:**

This policy shall apply in excess of all underlying insurance whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance), which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply whether such other insurance is stated to be primary, contributing, excess or contingent.

16. The following paragraph is added to **SECTION VI, Condition A. Premium:**

Premium Audit:

If an audit is determined to be necessary in order to determine the final premium due or to be refunded, it will be completed within 180 days after the expiration date of the "policy period". Audit premiums are due and payable on notice to the First Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the First Named Insured.

17. **IMPUTED LEGAL LIABILITY**

It is agreed that, subject to all terms, conditions, exclusions and definitions of the policy not expressly modified below, this policy provides coverage for "bodily injury" and "property damage":

(1) Arising out of an intentional or willful act;

(2) Caused by an "occurrence" as defined below; and

(3) For which the insured is legally liable.

Solely for the purposes of the coverage provided above, "occurrence" means:

From the standpoint of the insured, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

However; the coverage that would otherwise be provided by this endorsement applies only to the extent:

(1) Of the scope of coverage provided by the "underlying insurance" but in no event shall coverage be broader than the scope of coverage provided by the policy of which this endorsement forms a part; and

(2) That such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies of the policy of which this endorsement forms a part.

18. Section **VI. CONDITIONS, E. Legal Action Against Us.** is amended by the following:

The phrase "obtained after an actual trial" is deleted.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

### UMBRELLA LIABILITY PROVISIONS

**A.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**B.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Form SX 21 09 06 03

Page  1  of  1

© 2003, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE RETIREMENT INCOME SECURITY ACT

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to liability imposed on the "insured" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001-1381 (1976) (ERISA) or any changes to it.

**Form SX 21 61 06 97**   Printed in U.S.A.

© 1997, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the

**UMBRELLA LIABILITY PROVISIONS**

This policy does not apply to any "damages," judgments, settlements, loss, costs or expenses that:

1.  May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2.  Arise out of any request, demand  or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of any asbestos hazard; or

3.  Arise out of any claim or "suit" for "damages" because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form SX 21 75 06 97**   Printed in U.S.A.   (NS)

©1997, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTENSION OF COVERAGE ENDORSEMENT
# (NEW YORK)

This endorsement modifies insurance provided under the following:

**SPECTRUM UMBRELLA LIABILITY SUPPLEMENTAL CONTRACT**

The "Occurrence" definition is deleted and replaced by the following:

**H.** "Occurrence" means:

1. With respect to "bodily injury" or "property damage:" an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which result in "bodily injury" or "property damage" neither expected nor intended from the standpoint of the "insured." However, this limitation does not apply to "bodily injury" resulting from:

   a. The use of reasonable force to protect persons or property;

   b. The use of reasonable physical force to protect oneself from physical injury;

   c. The use of reasonable physical force to protect another pupil or teacher or any other person from physical injury;

   d. The use of reasonable physical force to protect the property of the school or others; or;

   e. The restraining or removal of a pupil whose behavior is interfering with the orderly exercise and performance of school district functions, powers and duties, if that pupil has refused to comply with a request to refrain from further disruptive acts.

2. With respect to "personal and advertising injury": an offense described in one of the numbered subdivisions of this definition in this policy.

Form SX 22 10 03 00

Page 1 of 1

© 2000, The Hartford